Good morning, Your Honor. It's Keith Ruttman for Appellant Benny Williams. Your Honor, regardless of how the Court rules on the procedural bars that are asserted by the respondent, I think you'd have to agree that Mr. Williams is persistent, prolific, and in terms of his typing ability, a perfectionist, which may combine together for the reasons there are delays here in the way he presented his claims. It appears from the record that not only does he read everything, he reads it twice, and not only does he type most of his briefs, he types them twice, and as was pointed out by the Supreme Court in Walker v. Martin, the California Supreme Court receives a voluminous amount of petitions, resulting in a delay from July 27, 2006, to February 14, 2007, when the final petition to them was denied. And then within three months, Mr. Williams then files his first federal petition. So I think he's certainly acting within the spirit and requirements of a depot when he tries to present as much information as possible and specify the basis for his claims. Now, a pro per obviously is held to the same standards, but there is some deference given to him, and virtually from the outset, he's claiming, first, it's not fair that each of these robberies is being used to buttress the other one, including the one from Oregon, which I recognize, as I say in our brief, that unless the Supreme Court specifically says that's a cognizable claim, then there's really nothing this court can do to change that. There will be a case someday where they may rule upon that, and all I'm suggesting is that this may be the one. But be that as it may, in terms of the underlying issue, our position was that the California Court of Appeal acted unreasonably in applying what is EWALT is the main case in California that addresses that, and really there's nothing unique or particular about a masked man going into a store with a gun and hiding late at night to rob it when the store closes. This is not like the gentleman bandit who leaves a rose behind or the pink panther who leaves the glove with the letter P. There's no signature here in any of these offenses that suggests that any one of them would point to Benny Williams as the robber in the other one. So that's why we contend that his due process rights were violated with respect to that. Didn't the judge give a limiting instruction? Well, the judge did give a limiting instruction. Is it efficient or not? Well, it was the California pattern limiting instruction, so I think the courts have held that that is sufficient. But there comes a point when just the overwhelming nature of— I mean, we had six or seven different robberies being used against one another. There becomes a point when a limiting instruction is simply not going to be sufficient to meet the weight of the evidence that it's being used to limit. I mean, two robberies, maybe you can distinguish them between the two, but six or seven or eight if you count the Oregon one gets to be a bit much at that point. In terms of Mr. Williams' claims with respect to how the priors were used, I think he raises a valid point, and when I say he, it's because he drafted the petition in pro per, in that they're telling him, we're going to use this prior conviction against you. You came after your new girlfriend or boyfriend with a baseball bat, but what were you actually convicted of and what were the facts that were alleged? And I think he raises a valid point because his lawyer wasn't exactly sure at trial what aspect of the case he was supposed to defend against. The facts come in, some of those charges were dismissed, some were not, and he ultimately pled out to one particular conviction, but he raises the point that it did not constitute a strike because there was no showing, by competent evidence, that a deadly weapon was used. Counselor, on that 1978, the change of plea, to me I was confused whether or not it was deficient. It looked like he was pleading guilty to, and I don't remember if he pled guilty to two or three, but the count that he pled guilty to was to the wrong victim. The facts that he provided that support the guilty plea were actually the facts for the count that he did not plead guilty to. It seemed like they got transposed. Right, they did, and I don't know how to explain that. It could be a clerical error. You know, that was 1978, and I don't know how many of those records. I know where I was in 1978, and I certainly wasn't in a position to investigate Mr. Williams. Okay, and my understanding was that the use of the deadly weapon was dropped as part of that negotiation. Correct. So for purposes of apprendi, we can use a prior if there's either been a jury finding or if there's been a conviction, you know, by plea. Right. Here he didn't plead to it, and there was no jury finding of that, of the deadly weapon, but they went ahead and used, I think it was the preliminary hearing transcript, and then his own statements to the probation officer for the PSI. The probation report and the preliminary hearing transcript. Basically, to me, that looks like what we encounter in sentencing guideline applications for prior convictions, where what are the judicially noticeable facts that we can rely upon. That's not what happened with respect to that particular conviction. The documentation was certainly an error. He didn't admit to using a deadly weapon at the time, and the wrong victim was listed. So, you know, all those things combined to raise the point is that you're not telling me exactly what I'm defending against. Am I defending against the facts that I admitted to? Am I defending against the conviction I actually pled guilty to? Which is it, and how are you going to prove it? The court was the one who made the finding that it was a violent felony. It wasn't a jury. Correct. You know, I've been wondering about that because he raised in his supplemental motion the apprendee issue, and I went back and looked at the record. In California, there's a statutory right to trial on priors. He clearly waived that because it went to trial before the judge alone, which is competent. The issue then becomes can you waive a constitutional right that you don't know about by virtue of waiving a statutory right that you do know you know about? Would it have made a difference? I'm not sure what the answer to that is. I think I have to say that it's an important enough question that it might warrant further briefing if the court is going to accept, grant him leave to file this brief, and I'd be happy to look into that if the court so desires. But, again, it goes back to the point he's trying to make is not only am I convicted based upon cross-admissible robberies that aren't particularly unique in terms of the annals of armed robbery cases, but they're taking a domestic dispute I had 10, 15 years ago that is clearly procedurally complicated at best and using that to enhance my sentence, and he doesn't believe, as he alleged in his trial, that that simply afforded him due process, that he's serving a term of 140 years to life, not even counting the, I think it was like 160 other years that were stayed by virtue of California laws as basically duplicative. How is all that affording him due process? That's his main contention. Was the California Court of Appeals, did they unreasonably apply the notions of due process that are afforded to people when they concluded that there was simply no procedural defect with the way his trial was conducted and the way he was sentenced? I would like to address the procedural default issue, if I might, just briefly, because I know counsel is going to address it. Walker v. Martin was issued earlier this year, and the direct language from a unanimous court was that a summary denial citing Clark and Robbins means that the petition is rejected as untimely. I'm not willing to concede that that speaks to every aspect of how a petition is presented, but I do think it says what it says. Whether it means what it says is ultimately the question for this court, and with those comments, I'd like to submit and reserve the balance of my time for rebuttal, if I might, unless there are any questions from the bench. No, thank you. Thank you. May it please the court, Lynn McGinnis, Deputy Attorney General for Appellee. I'd like to start with the procedural bars and get to the other stuff, because I think in light of Walker v. Martin, some of this court's decisions are no longer viable or need to be altered and need to be done so perhaps in a published decision, and that's particularly Bennett v. Mueller and King v. Lamarck. Now, Walker v. Martin says two things that's inconsistent with Bennett and King, and to start off, we're not asking the court to overrule Bennett. We're asking the court to modify Bennett a little bit. Walker v. Martin says that it's not enough that the bar is inconsistently applied. It must be freakishly applied in a way that violates the defendant's federal constitutional rights. Now, this court's older opinions say it must be inconsistently applied, and obviously that's no longer true. Now, King v. Lamarck says that all a defendant must do because the bar is presumed to be inadequate under this court's authority is simply make a statement like the petitioner did here that the bar is not applied fairly to me. He doesn't really need to do anything more, which is what happened in this case. He basically cited some law from the 80s and said, I don't think this bar is fair, and then the district court, not the magistrate judge, but the district court held that that was enough to shift the burden to the state to have to cite case law and other authorities to say that it was fair or whatever the third part of the test is. Now, Bennett v. Mueller gives a three-part test, which we think is still a viable test for how this should be pled and proven, and we do think that the burden, if the petitioner gives adequate allegations, the burden still should be on the state because it is an affirmative defense. What we do think is missing here is what the petitioner has to do at the second prong of the analysis, and that is because the bar has now been held to be presumed to be adequate, the petitioner should now have to plead facts to show that in his particular case it was frequently applied in a way to deny him his constitutional rights so that that second part of the test would put a heavier burden on the petitioner than exists under the current law, and that's in light of Walker v. Martin. If the petitioner is able to do that, which some petitioners might, maybe this guy could because the time periods were so short, I don't know, then in that case, if he could come up with facts, he or she can come up with facts to show that in his particular case it was freakishly and arbitrarily applied under Walker, then the burden would go back to the state to prove that that's wrong, but this idea that all they have to do is say it's not fair is not enough in light of Walker v. Martin. Now, defense counsel was discussing how diligent his client is and how the Supreme Court shouldn't have denied it as untimely. Well, the fact is that they did, and this court has to give deference or what have you to the California Supreme Court's determination. The remedy, as we said, for a petitioner is to show that that was arbitrary and freakish in light of what he did. Now, I want to discuss the merits a little bit, and there isn't much merit to this petition. It raises some interesting state law questions, but it really doesn't raise a federal question. As far as Apprendi goes, and I know that was a supplemental brief and it was not in the briefing that the court is considering, but since the court mentioned it, I just want to point out that in my understanding, there's no Apprendi right to a jury trial on prior convictions. Anyway, that's an exception to Apprendi. Now, this can be convicted of the firearm use. That was the part of the original indictment or information that was dismissed as part of the negotiation. He wasn't convicted of the use of the firearm or the weapon or the baseball bat or whatever it was. Well, he admitted or the court found that he suffered a prior strike. I mean, he might have a statutory right to a jury trial on a prior conviction, but he waived that right and he was tried by the court, and the court found that he suffered a prior conviction with use of a firearm. Now, if there was a problem with his guilty plea that was confusing as to what... No, I thought that the conviction was not with use of a firearm. I thought that was the part that was dismissed as part of the negotiation. The original charge included the firearm, but then the firearm use was dismissed, and that's why he pled guilty. So the conviction was actually without the use of the firearm. The conviction was without the use of a firearm, but the issue before the court was whether under California law, that could be resurrected to be used to make the conviction a prior strike. Now, the first question is, is that even a federal law question, whether something's a strike or not under California law? He tried to raise it as a federal question by arguing double jeopardy, because that was already dismissed, but counsel conceded in his brief that there was no double jeopardy problem. The other way he tried to raise it as a federal question was by arguing the contract clause but the contract, as we pointed out, was not that he would never get something used against him if he committed future crimes. It was just that he would get the benefit of his plea bargain, and he got the benefit of his plea bargain. Now, beyond that, whether it's vague and ambiguous or whether it's a strike or not, that's something that has to be resolved by the California courts, as interesting as it is, and it is interesting that it's a little confusing, but if he felt that he pled guilty to something that was confusing, he had a remedy or still has a remedy, perhaps, and that is to withdraw the plea, saying there wasn't an adequate factual basis for my plea in the state court. As far as the 1101 evidence or due process question of cross-admissibility of offenses, let's assume that I believe perhaps that the 1978 conviction was deficient and should not be used as a prior. Aren't there two other priors? It would be irrelevant whether or not you used the 1978 conviction. Yes, that's absolutely true, Your Honor. As the Court of Appeal and the magistrate judge and the district court judge found, there was a 1974 prior conviction for, I don't remember what it was for, but there was a 1996 prior conviction for attempted robbery, and two of them will get you a three-strike sentence, so we don't really need this one. Thank you. As far as the 1101B cross-admissibility evidence, that's a very interesting question, but as counsel admits, the U.S. Supreme Court hasn't ruled on it, so that precludes this court from finding it unreasonable. What I will point out, just because it's interesting, is that these are, except for the Oregon robbery, these were all charged offenses, so it isn't even really a cross-admissibility of evidence issue. It's more of a jointer and severance issue, and each of these offenses had to be proven beyond a reasonable doubt except for that one. So to the extent the court would even be inclined to think due process, the fact that they were charged offenses and that the prosecution had a right to join offenses absent some motion for severance, and there was no motion for severance even in the state court, then there is no conceivable way. It's not like you're having one charge and admitting seven prior robberies. It's having seven robberies and admitting one uncharged offense, so that would not rise to the level of a due process violation in any event. And unless the court has further questions, we would submit. Are there any further questions? I have no questions. Thank you. Just briefly, I think the question of how we would prove that this was unreasonably applied would certainly at first instance seem to be an enormous undertaking, requiring an analysis of basically every brief that is submitted to the California Supreme Court, looking at the issues that it raised and comparing the timing. This case alone, the math for me when I sat down and first read through the opinions and started drafting the brief, the math alone took me back to calculus and wishing that maybe I had gone on to a science career at the time. But that is a daunting prospect as to how to challenge that. I think empirical evidence and the statistician would certainly in the first instance be helpful in that regard. But again, if the court is inclined to address that, I would like the opportunity to think on that and submit a supplemental brief if necessary. Other than that, I'd just submit on my prior comments and thank the court for its time. Thank you. Thank you. Thank you. The matter just argued is submitted for decision. We'll hear the next case, which is United States v. Phelps. Judge Schroeder, after Phelps, could we take a break? Before hearing the last case, we'll take a break.
judges: Navarro, Schroeder, Gould